UNKNOWN PERSON on Behalf of Jennifer Marie ENGLERT, an Infant, Movant,

v.

Kristen Clark WHITTINGTON, Joan Leslie Englert, and Commonwealth of Kentucky, Cabinet for Human Resources, Respondents.

No. 86–SC–367–DG.

Supreme Court of Kentucky.

June 11, 1987.

Rehearing Denied Nov. 5, 1987.

Mitchell A. Charney, Ann Leslie Bailey, Goldberg & Simpson, Louisville, Ky., Robert L. Milby, Marcia M. Ridings, Hamm, Milby & Ridings, London, Ky., for movant.

James E. Morreau, Jr., Edward M. Post, Taustine, Post, Sotsky, Berman, Fineman & Kohn, Louisville, Ky., for respondents.

STEPHENSON, Justice.

Kristen Clark Whittington filed a CR 60.-02 action to set aside a judgment terminating his parental rights. The trial court held an evidentiary hearing and denied the motion to set aside the judgment. The Court of Appeals reversed. We granted discretionary review and reverse the decision of the Court of Appeals.

Joan Englert, an unmarried, seventeen-year-old, gave birth on August 21, 1982, to a child. Five days after the birth, she signed a consent to adoption. On the day the child was to be released from the hospital and placed with the adoptive parents, Whittington filed a petition with Jefferson Circuit Court, claiming parental rights to the child. In this same action, Whittington filed a motion for a restraining order and temporary injunction to prevent the hospi-

tal from releasing the child to anyone other than the mother.

Whittington, in this petition, recited his address in Louisville and that he believed his parental rights to the child would be endangered by an attempt to place and adopt the child.

The trial court declined to issue a restraining order against the hospital. The child was then placed with the adoptive parents.

On October 26, 1982, a petition for termination of parental rights was filed in the Laurel Circuit Court against the mother, Joan Englert, and Whittington.

Service of process on Whittington was first attempted by certified mail to the Louisville address listed by him in the circuit court petition filed by him. Next, an alias summons was issued on November 22, 1982, to the Sheriff of Jefferson County. The return was filed, stating inability to locate Whittington. A warning order attorney was then appointed on December 16, 1982. On January 25, 1983, the warning order attorney filed his report that he had attempted to contact Whittington by mail at his former Louisville address, but that the letter was returned to him with the notation "Not Deliverable As Addressed: Unable to Forward."

The parental rights of Englert and Whittington were terminated on February 9, 1983. A petition for adoption of the child was filed by the adoptive parents on February 10, 1983, and the judgment of adoption was entered on March 11, 1983.

On September 10, 1984, Whittington filed a motion to set aside the order terminating his parental rights, and on September 13, filed an amended motion. At a hearing on the motion, Whittington testified that he had moved to Corpus Christi, Texas, on October 8, 1982, and that on the 13th of October he had called the lawyer for the adoptive parents and stated that he told the lawyer his address in Texas and was told they had decided to do nothing. He testified that he later called the lawyer on February 26, 1983, and was told that nothing had happened in the case. He further testified that he had never received any notice of the action terminating his parental rights. He testified further that he had moved back to Louisville in October of 1983. The lawyer testified that he could not remember the date of the first call but denied that Whittington had given his address in Texas or that they had discussed anything at all about the action to terminate parental rights. He further testified that on a subsequent call, Whittington did not give him an address but had told him he was fourteen hundred miles from Louisville.

The trial court made a finding of fact that he believed the lawyer rather than Whittington and denied the motion to set aside the termination of parental rights.

The first telephone call was before any pleadings were filed and the second call after the order terminating parental rights in Whittington. With the finding of fact by the trial court, we accept as a fact that the lawyer for the adoptive parents did not know Whittington's address in Texas and on the first call assumed he was still in Louisville. On the second telephone call, Whittington informed the lawyer he was fourteen hundred miles away. We observe that the lawyer had no duty to talk to Whittington about any proceedings and only a duty not to mislead him. Accepting the finding of the trial court, Whittington was not misled in any way by the lawyer for the adoptive parents.

The Court of Appeals found that the resort to constructive service on Whittington was not in good faith and that the trial court did not obtain jurisdiction over Whittington, rendering the judgment terminating parental rights null and void.

This holding by the Court of Appeals is based on the failure of the attorney to ask Whittington his address on the telephone call of October 13. For this reason, the affidavit for warning order was characterized as a "sham pleading" in the Court of Appeals' opinion. Further, the Court of Appeals held that the Civil Rules on constructive service contemplate that a plaintiff must, in good faith, make a reasonable, honest, and diligent effort to ascertain the

whereabouts of a defendant and that such reasonable effort would include contacting those persons known to the plaintiff or his attorney who would be likely to know the defendant's whereabouts. This included here, according to the Court of Appeals, Whittington's lawyer in the Jefferson County Court lawsuit, the child's mother, etc. We cannot find in the record any suggestion that either knew Whittington's address in Texas, or that he was in Texas.

The scenario leading to the affidavit for a warning order was first the attempt to serve Whittington by mail at Whittington's Louisville address. CR 4.01(1)(a). When that failed, an alias summons was issued to the sheriff of Jefferson County for the same address. CR 4.01(1)(b). When this return was filed showing "not found," it was then that a warning order was issued, CR 4.05, and the attorney filed an affidavit in accordance with CR 4.06, stating the last known address of Whittington. The address given was the same Louisville address. The warning order attorney, in accordance with CR 4.07, informed Whittington by mail directed to the Louisville address.

We are of the opinion the affidavit for a warning order and this warning order attorney's actions were all in accordance with the Civil Rules and that the affidavit was not a sham pleading. If there had been a showing that the attorney making the affidavit knew or should have known of someone who knew Whittington's whereabouts, then there would be a duty to make an inquiry. In the absence of such a showing, the Civil Rules cannot be construed so as to require the efforts imposed by the Court of Appeals. We have not found a case in this Commonwealth setting out additional requirements for the affidavit for warning order in addition to the last known address. The finding by the trial court answers the holding by the Court of Appeals that the attorney who received the phone call on October 13 should have asked Whittington's Texas address. The lawyer had testified that he had the impression Whittington was calling from Louisville.

We are of the opinion from the record that the affidavit for the warning order was made in good faith and that Whittington was properly before the court after the report of the warning order attorney. CR 4.07.

As to the child's mother, the Court of Appeals correctly observed that she is not a party to this appeal. The issue decided by the Court of Appeals that the judgment terminating her parental rights is void was not before the court, and the Court of Appeals was not authorized to make any finding as to that judgment. Regardless of any procedural defect as to KRS 199.601, the child's mother was before the court as a defendant and has not appealed from the judgment terminating her parental rights.

This is not surprising considering her consent to adoption. The petition for termination of parental rights was filed against both the mother and Whittington. The judgment terminated parental rights of both. Whatever defect in procedure may have occurred, the judgment is not void and, as noted, has not been appealed from. We are of the opinion the Court of Appeals was not authorized to declare this judgment void or to consider it at all.

The decision of the Court of Appeals is reversed.

STEPHENS, C.J., and GANT, VANCE, and WINTERSHEIMER, JJ., concur.

LAMBERT, J., not sitting.

LEIBSON, J., dissents and files a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This is a very unusual case. On August 24, 1982, three days after the birth of his child, young Whittington filed a "Petition Claiming Parental Rights" in Jefferson Circuit Court, stating "that his parental rights are endangered by a party or parties unknown who may attempt a placement and adoption of the said infant female in violation of petitioner's parental rights."

An immediate hearing was held on this Petition. The same counsel who have represented the adopting parents before our Court, and who have been in control of this litigation throughout, appeared and successfully resisted Whittington's initial Petition. The Temporary Order then sought was refused with assurances to Whittington that he would later be notified of any legal action to terminate his parental rights or to adopt the child.[1] Later, when these steps were taken, Whittington was not notified, and no effort was made to contact his attorneys in the Jefferson Circuit Court action to find out his whereabouts, although that action was still pending.

Turning to the various telephone conversations between Whittington and the attorney representing the adopting parents, admittedly Whittington called on two or more occasions, and unquestionably the purpose of his telephone calls was to make sure that he would be advised of further action to terminate his parental rights or to proceed with adoption.

Whittington has testified that he gave his Texas address, and that he was assured that nothing was being done. The testimony to the contrary is vague and unsatisfactory. The attorney for the adopting parents claims that he was neither advised nor inquired about Whittington's location. Further, he denies that he told Whittington nothing was being done. If neither Whittington's whereabouts nor the status of the case was discussed, the reasons for and the contents of these conversations becomes an incredible mystery.

If one reads the complete record in this case, as I have, one can only conclude that the effort made to serve Whittington by mail and through Warning Order Attorney was totally inadequate and inconsistent with good faith compliance with KRS 199.-607(2) and with CR 3 and 4. Appellee's counsel never made a bona fide effort to obtain service on Whittington. The Court of Appeals' Opinion states that "a plaintiff must in good faith make a reasonable, honest and diligent effort to ascertain the whereabouts of a defendant so that he may receive notice of the pendency of the suit against him. Such a reasonable effort would include contacting those persons who know the plaintiff, or his attorney who would be likely to know the defendant's whereabouts." The Court of Appeals concluded that the trial court's finding that the effort to serve Whittington was adequate and in good faith was clearly erroneous. I agree.

I would affirm that portion of the Court of Appeals' decision holding that the final judgment should be set aside under CR 60.02. Whittington is entitled to his day in court on the issue of whether his parental rights should be terminated. We should not tolerate the manner in which the law has been manipulated to deny him his day in court on this issue.

Nothing in this dissent is intended to express any opinion on other portions of the case pertaining to: (1) the termination of the parental rights of the child's mother, which was voluntary; or (2) on the status of the judgment of adoption, which is not before us; or (3) on the question of child custody, which is a different issue from termination of parental rights.

---

1. A certified copy of the record from Jefferson Circuit Court was filed as an Exhibit in this case. It includes the following statement in a letter written April 18, 1984 from the Judge of Jefferson Circuit Court to the Judge of Laurel Circuit Court:

   "Apparently what Mr. Whittington feared would happen did happen. The child was apparently placed with prospective adoptive parents and an adoption proceeding was undertaken. I am not aware of the status of such adoption proceeding. I recall that Mr. Robert Milby appeared in my Court with reference to this matter, but cannot recall full details of what was discussed on that occasion. It may, and most probably was pointed out that any adoption proceeding would of necessity require the termination of parental rights of the father and that Mr. Whittington would have an opportunity to oppose the termination of his parental rights and thereby forestall or defeat any adoption sought by others."