paramount, not the findings or actions of the physician.

When the patient's motive in visiting a physician is to obtain a medical diagnosis or medical treatment, the law recognizes the increased reliability of such a statement.

> All that *Drumm, supra,* contemplates, is that a party offering such evidence lay sufficient foundation to show the relevance and reliability of the hearsay statements made by the victim, i.e., that circumstances surrounding the way the physician obtained these statements evinces their trustworthiness.

*Jones v. Commonwealth*, Ky., 833 S.W.2d 839, 841 (1992). In today's world it is difficult to imagine a more compelling reason to provide a physician accurate information than seeking a determination of whether or not one has a sexually transmitted disease.

The trial court found that, "considering the case as a whole, . . . the Court believes that the probative value of the evidence, as relates to the case history, outweighs any prejudicial effect to the defendant." This finding was supported by the evidence and within the sound discretion of the trial court.

GRAVES and WINTERSHEIMER, JJ., join this dissent.

**Kristen Clark WHITTINGTON,**
**Appellant,**

v.

**Elmer CUNNAGIN, Laurel County, Kentucky, Attorney on Behalf of Jennifer Marie ENGLERT, an Infant; Joan Leslie Englert; Commonwealth of Kentucky, Cabinet for Human Resources and Adoptive Parents, Appellees.**

**No. 94–SC–327–DG.**

Supreme Court of Kentucky.

July 25, 1996.

As Modified July 31, 1996.

James E. Morreau, Jr., Bruce A. Bright-well, Kruger, Schwartz & Morreau, Louis-ville, for Appellant.

Elmer Cunnagin, Jr., London, Edward D. Klatte, Cabinet for Human Resources, Frankfort, Mitchell A. Charney, Mary A. Maple, Goldberg & Simpson, P.S.C., Louisville, for Appellees.

ROBERT M. SPRAGENS, Sr., Special Justice.

This is the second time this case has been before this Court. An order of the Laurel Circuit Court terminating Appellant's parental rights was entered on February 9, 1983. On September 10, 1984, Appellant filed a motion to set aside that order. After a hearing, the trial court denied the motion. The facts surrounding the termination proceedings and subsequent judgment of adoption are detailed in the opinion of this Court affirming the lower court and need not be repeated here. See *Unknown Person on Behalf of Englert v. Whittington*, Ky., 737 S.W.2d 676 (1987), cert. denied, 485 U.S. 979, 108 S.Ct. 1276, 99 L.Ed.2d 487 (1988).

A second CR 60.02 motion seeking to set aside that termination order was filed in the trial court on March 31, 1992. Filed with that motion was an affidavit of the biological mother of the child who was present in the courtroom when a hearing on the first CR 60.02 motion was held in 1984. At that time she was not called as a witness. Her affidavit contained, along with other allegations, the statement that when the termination petition was filed in 1982, she knew the Appellant had moved to Texas, that she knew his address and telephone number and that she would have provided this information to the attorneys who filed the petition if they had inquired. This affidavit was obviously an attempt to resurrect the attack on the validity of the warning order issued in the termination proceeding and was the only additional evidence proffered by Appellant which was not in the record at the time the first CR 60.02 motion was overruled. The lower court did not find this affidavit to be either persuasive or timely. The trial court further held that all other reasons advanced by Appellant in support of his motion should have been raised on appeal or were decided adversely to him on the first appeal.

The only issue to be determined on this appeal is whether the refusal of the trial court to grant Appellant's CR 60.02 motion constituted an abuse of discretion, *Bethlehem Minerals Company v. Church and Mullins, Corporation*, Ky., 887 S.W.2d 327 (1994).

The child of Appellant is now more than thirteen years of age. She has been with her adoptive parents virtually all of her life. To interfere with that relationship at this late date could have an adverse emotional impact not only on the child, but also the adoptive parents. As the Court of Appeals observed, if the lower court had set aside the order terminating Appellant's parental rights, an absurd situation would have been created. He would have reacquired rights equal to those of the adoptive parents. We agree with the Court of Appeals that there was no abuse of discretion by the lower court.

Although Appellant obviously feels, and perhaps with some justification, that he has been the victim of a miscarriage of justice,

we agree with the following excerpt from *Fortney v. Mahan*, Ky., 302 S.W.2d 842, 843 (1957): "The desire that justice be accorded the parties clashes on some occasions with the principle that litigation must end within a reasonable time." It is time that the validity of the termination order be finally laid to rest.

The opinions of the Court of Appeals and the Laurel Circuit Court are affirmed.

STEPHENS, C.J., and BAKER and WINTERSHEIMER, JJ., concur.

KING, J., dissents by separate opinion in which GRAVES and STUMBO, JJ., join.

LAMBERT, J., not sitting.

KING, Justice, dissenting.

Respectfully, I dissent.

This case has a long and arduous history. It has brought pain to the parties and their counsel, aroused judicial passion, and sullied our system of justice.

The trial court erred in not granting Whittington's request for an evidentiary hearing on his CR 60.02 motion to vacate the judgment terminating his parental rights. In order to put the matter in context and understand the deleterious impact of today's decision, an extended description of the facts is necessary.

Joan Englert, an unmarried seventeen-year-old, gave birth to a daughter in Louisville, Kentucky, in 1982. The appellant, Kristen Clark Whittington, is the child's biological father. Shortly after the child's birth, Englert executed a consent to adoption. Three days after the birth of his child, Whittington filed a petition in the Jefferson Circuit Court opposing the adoption and asserting his parental rights to the child. He sought a restraining order preventing the hospital from releasing the child to anyone other than the child's mother.

An immediate hearing was conducted on Whittington's motion for a temporary restraining order. His request was denied with assurances that he would be notified of any legal action to terminate his parental rights. This was not done, resulting in a substantial injustice.

Two months after the child's birth, a petition for termination of parental rights was filed in the Laurel Circuit Court against both natural parents, Englert and Whittington. Service of process was attempted by certified mail and alias summons at the Louisville address listed in the action previously filed by Whittington in the Jefferson Circuit Court. Because Whittington could not be located, a warning order attorney was appointed. The warning order attorney merely forwarded a certified letter to Whittington at the same address the previous certified mail and alias summons were sent. Whittington was not notified of the action. No attempt was made to contact his attorneys in the Jefferson Circuit Court action to find his correct address, even though that action was still pending and the attorneys for the adoptive parents participated in that action.

A judgment terminating the parental rights of Englert and Whittington was entered one month later. At the time the judgments were entered, there was nothing in the Laurel Circuit Court record which would have alerted the trial court of Whittington's desire to retain parental rights, the existence of the Jefferson Circuit action, or the identity of his attorney. In determining that involuntary termination of Whittington's parental rights was in the best interest of the child, the trial court "considered the deposition of record in this case of Mary Lou Cissell," the mother of Englert. Cissell testified that Whittington was physically abusive to Englert, that he had abandoned the child, and that she did not know where Whittington could be located.

In September, 1984, Whittington filed a motion to set aside the order terminating his parental rights. A hearing was conducted and Whittington testified that he had moved to Texas but that his attorney was fully informed of his whereabouts. Furthermore, Whittington testified that one week after moving from the Louisville address, he telephoned the attorney for the adoptive parents. During that conversation he provided his Texas address and was told no legal action was pending. Four months later he tele-

phoned the same lawyer and was again told no legal action had been filed. At the hearing, the lawyer for the adoptive parents acknowledged these telephone calls and admitted that he did not inform Whittington of the pending action to terminate his parental rights. However, he denied being provided with Whittington's address. He provided no insight into why Whittington called nor the contents of their discussion. Despite this vague testimony, the trial court believed the attorney and overruled the motion.

On the first appeal, *Unknown Person on Behalf of Englert v. Whittington,* Ky., 737 S.W.2d 676 (1987), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1276, 99 L.Ed.2d 487 (1988), this court affirmed the trial court's judgment of termination of parental rights on the basis that the affidavit for a warning order and the warning order attorney's actions were in accord with the rules. "We cannot find in the record any suggestion that either [Whittington's lawyer or Englert] knew Whittington's address in Texas, or that he was in Texas." *Id.* at 678. "If there had been a showing that the attorney making the affidavit knew or should have known of someone who knew Whittington's whereabouts, then there would be a duty to make an inquiry." *Id.* The dissent observed that "the effort made to serve Whittington ... was totally inadequate and inconsistent with good faith compliance" with our statutes and rules of procedure. *Id.* at 679. The dissent concluded:

> Whittington is entitled to his day in court on the issue of whether his parental rights should be terminated. We should not tolerate the manner in which the law has been manipulated to deny him his day in court on this issue.

On December 30, 1991, Whittington, pro se, sought an order from the Laurel Circuit Court to unseal the trial court record. The next month, for the first time, he was allowed to view the entire record and discovered matters previously unknown to him. The following month, he obtained an affidavit from the child's natural mother and, based upon its contents, again moved to set aside the judgment terminating his parental rights.

Englert's affidavit contains shocking allegations which strike at the very foundation of the judgments entered. For example, Englert not only knew Whittington had moved to Texas, she was aware of his address and telephone number. Furthermore, she notified her mother that she possessed such information. Because the attorneys for the adoptive parents knew Englert would not perjure herself, she alleges they shunned her and deposed her mother, who knowingly and falsely testified upon matters essential to the termination proceeding. Englert states in her affidavit that Whittington never abused her, never abandoned his child, and that her mother agreed with the attorneys of the adoptive parents to commit perjury so that Whittington's parental rights could be involuntarily terminated. Accordingly, Englert maintains the trial court was deceived in believing that Whittington's whereabouts were unknown, that he was abusive and that he abandoned his child. Englert maintains that the attorneys for the adoptive parents knew that if she testified she would reveal this information. Englert was previously unwilling to give the testimony contained in her affidavit for fear her mother would get in trouble.

When the matter last came before the trial court, Whittington stated in part:

> I have no desire and intention to take this child from these people. I know they are good and loving parents. However, I feel I have some right to this child. I have been denied my rights. I am not trying to hurt this child, I just want to have some visitation with this child.

Whittington pointed out to the trial court that Englert's affidavit was uncontroverted and, at the very least, he was entitled to an evidentiary hearing. However, the trial court denied Whittington's request for an evidentiary hearing, stating Englert's affidavit was neither "persuasive or timely." The trial court gave no basis for this conclusory finding.

On appeal, a divided Court of Appeals affirmed the trial court. The dissent capsulized ten years of litigation in one sentence:

> I dissent because, if there ever was a case that caused a stench in the nostrils of jurisprudence, it is this one.

In affirming the trial court, the majority opinion states: "[t]he only issue to be determined on this appeal is whether the refusal of the trial court to grant Appellant's CR 60.02 motion constituted an abuse of discretion." I disagree.

The trial court had before it an inadequate factual basis to make a decision on the merits of this motion. The issue presented by this case is whether the trial court abused its discretion in not granting Whittington's request for an evidentiary hearing. Such a hearing would have provided a solid factual basis upon which a decision could be made.

Prior to his denial of Whittington's request for an evidentiary hearing, the trial court stated that in view of the "amount of litigation that has occurred and the fact that the decision has been appealed ... first to the Court of Appeals and then to the Kentucky Supreme Court, I don't see the likelihood of having an evidentiary hearing." However, this is *not* the standard by which such motions are measured. Such a test is not authorized by our civil rules or case law.

Whether to relieve a party from a final judgment pursuant to CR 60.02 is within the sound discretion of the trial court. One of "the factors to be considered by the trial court in exercising its discretion [is] whether the movant had a fair opportunity to present his claim at the trial on the merits." *Fortney v. Mahan*, Ky., 302 S.W.2d 842, 843 (1957). The trial court appears to have believed that because of the shear amount and length of litigation, Whittington would not be able to ultimately prevail on his CR 60.02 motion to set aside the judgment terminating his parental rights, and thus the trial court did not hold an evidentiary hearing. However, the ultimate issue for the trial court is whether Whittington had a *fair* opportunity to present his claim, not how long the litigation has lasted or how many appeals Whittington has had. The trial court could not make this determination without an evidentiary hearing.

CR 60.02 was designed to permit a trial court to relieve a party from a final judgment under certain extraordinary circumstances. Six possible reasons are enumerated in the rule and three are germane to Whittington's motion:

1) Did fraud affect the proceedings?
2) Was the judgment void? or
3) Was there any reason of an extraordinary nature justifying the judgment be vacated?

The biological mother's affidavit alleges facts which address each of the above enumerated requirements. The trial court overlooked the fact that the factual basis upon which this court previously affirmed this case was the conclusion that there was no showing that the attorneys who filed the affidavit for a warning order (the attorneys for the adoptive parents) "knew or should have known of someone who knew Whittington's whereabouts." *Whittington, supra,* at 678. Englert's affidavit places this conclusion in serious doubt. In addition, Whittington obtained an affidavit from his counsel in the Jefferson Circuit Court action stating that he knew Whittington's address in Texas and that the attorney for the adoptive parents knew he was representing Whittington. Nevertheless, the trial court refused to permit a hearing where these allegations could be scrutinized.

When a party presents an uncontroverted affidavit containing allegations, which if true, would entitle the movant to relief under CR 60.02, it is an abuse of discretion for the trial court to refuse to grant an evidentiary hearing. To hold otherwise vitiates the purpose of CR 60.02 and relegates it to a meaningless showpiece.

I express no opinion on the accuracy of the contents of the affidavit in support of the CR 60.02 motion. An evidentiary hearing would have allowed these allegations to be fully examined and the truth determined.

Our court is a court of institutional review. As such, our decisions not only affect the litigants to this action, but also the parties to all actions within our Commonwealth. In its laudable desire to seek the best interest's of the child in this case, the majority has made the relief offered by CR 60.02 exclusively dependent upon the decision of the trial court. However, the judgment of the trial court is not necessarily conclusive and the

trial court does not have "an entirely free hand in discretionary matters." "Appeal and Error," 5 C.J.S. 216.

> Though this court should not, upon slight grounds, interfere to control the discretion ... to be exercised by the inferior courts ..., that discretion should not be exercised in violation of law, or in such manner as to endanger materially the rights of litigants, or to defeat the ends of justice.

*Donallen v. Lennox,* 36 Ky. 89, 6 Dana 89 (1838). It is our duty to see that the "ends of justice" are not defeated.

There is another issue in this case which transcends the parties—public trust in our justice system. A basic precept of American jurisprudence is that everyone is entitled to present their side of a dispute. Whittington never had such an opportunity. When the facts of a case have not been examined, there can be little confidence in the result achieved. With examination comes truth, with truth comes justice, with justice comes public trust. Today's decision only provides finality.

GRAVES and STUMBO, JJ., join this dissent.