**Ricky Dale BARNETT, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Nos. 97–SC–218–MR, 97–SC–556–TG.

Supreme Court of Kentucky.

Oct. 15, 1998.

David Austin Tapp, Somerset, for appellant.

A.B. Chandler, III, Attorney General, William L. Daniel, II, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

LAMBERT, Chief Justice.

The issue presented on direct appeal is whether a county attorney may assist the Commonwealth's Attorney in the prosecution of a criminal case without first having entered into a written agreement pursuant to KRS 15.725. We granted transfer from the Court of Appeals to consider a separate but closely related issue of whether a fiduciary relationship between the county attorney and the crime victim precludes the county attorney in any event from assisting in the prosecution.

On the morning of August 1, 1996, eighty-year-old Fuller Harding entered his garage where he was confronted by a masked man. Harding struggled with the intruder, and was hit over the head with a skillet by a second person. A third person closed the garage door to keep anyone from seeing the struggle. Bleeding profusely, Harding fell to the floor and was later discovered by a neighbor. The attackers stole Harding's car and two diamond rings. Harding suffered a broken hip, a broken jaw, and broken orbital bones as well as a concussion. He was taken to the Campbellsville hospital where his injuries were photographed, and then he was taken by air to a Louisville hospital.

Appellant, Ricky Dale Barnett, was convicted by a Taylor County jury of first degree complicity to commit robbery, first degree complicity to commit burglary, and second degree complicity to commit burglary. He was sentenced to twenty years, ten years, and five years, respectively, with the sentences to be served consecutively for a total of thirty-five years imprisonment. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). He also appeals pursuant to CR 60.02, based upon the post-trial discovery that Craig Cox, the Taylor County Attorney and a prosecutor in the circuit court trial, was the limited guardian and personal attorney of the victim.

Following the Commonwealth's opening statement, appellant objected to Cox's participation based upon the lack of a written agreement authorizing the sharing of prosecutorial duties between the County Attorney and the Commonwealth's Attorney and based upon the failure to obtain an appointment as a special prosecutor from the Attorney General. These objections were overruled and were later renewed during the trial and in

post-trial motions. Each of these motions was overruled.

Following the jury verdict, appellant moved for a new trial, alleging that Cox should have been disqualified pursuant to KRS 15.733 due to a conflict of interest arising from his relationship with the victim, Fuller Harding. At sentencing, the trial court allowed appellant to examine both Cox and Harding regarding any potential conflict of interest. Both Cox and Harding denied that Harding had granted Cox a power of attorney and denied that Harding had named Cox a beneficiary under his will. There was no inquiry as to another legal relationship and neither Harding nor Cox disclosed any other such relationship between them.

After sentencing, a search of the Taylor County courthouse records disclosed that Cox had been appointed as the limited guardian for Harding several days after the crime. In support of his petition to be appointed as limited guardian, Cox stated that Harding had been incapacitated as a result of an assault and robbery. Cox also stated that he had been Harding's "personal and private" attorney and had performed legal work on Harding's behalf, that he was named as executor in Harding's will, and that he was the attorney for Harding's wife's estate and subsequent executor in the event that Harding was unable to perform as the executor of his wife's estate.

Based upon this information, appellant sought relief from the final judgment of conviction and sentence pursuant to CR 60.02, claiming that Cox's legal relationship with Harding created a conflict of interest that should have barred him from assisting as a prosecutor in appellant's trial. The trial court denied appellant's CR 60.02 motion.

We will first address appellant's claim of error based upon the absence of a written agreement as presented in his matter of right appeal. Then we will consider the propriety of the CR 60.02 appeal and, if such appeal is deemed proper, we will then address whether appellant is entitled to relief.

■ Appellant's first claim of error is that Cox's participation in appellant's prosecution was improper. In support of this claim, appellant first argues that KRS 15.725(3) requires that a formal written agreement be executed regarding a county attorney's assistance in the prosecution of the Commonwealth's cases, and that such written agreement must be approved by the Attorney General, the chief judges of the Circuit and District Courts, and the chief regional judges of the Circuit and District Courts. Appellant contends that the trial court erred by allowing Cox to participate in the prosecution absent such a formal written agreement between Cox and the Commonwealth. The Commonwealth contends that a written and approved agreement is only required when the Commonwealth and County attorneys agree to share or redistribute prosecutorial duties, not when they merely assist each other in prosecuting cases.

Resolution of this issue turns on the interpretation of KRS 15.725(3), which provides that

The Commonwealth's attorney and county attorneys in a judicial circuit shall cooperate in the enforcement of criminal and penal laws of the Commonwealth. When necessary, the Commonwealth's attorney and county attorney *shall assist each other in prosecution within their respective courts.* Each Commonwealth's attorney and county attorney *may enter into agreements to share or redistribute prosecutorial duties in the Circuit and District Courts* . Any prosecutorial or related duty assigned by statute to the Commonwealth's attorney may be performed by the county attorney, and any prosecutorial or related duty assigned by statute to the county attorney may be performed by the Commonwealth's attorney pursuant to these agreements. Copies of the agreements shall when executed be forwarded to the Attorney General, the chief judges of the Circuit and District Courts, and the chief regional judges of the Circuit and District Courts.

(Emphasis added). Appellant's position is that Cox's assistance in the trial was equivalent to sharing or redistribution of prosecutorial duties, which requires a written agreement. The Commonwealth's position is that rendering assistance does not require a writ-

ten agreement because it is not the same as sharing prosecutorial duties, a situation, for example, wherein the Commonwealth attorney allows the County attorney to prosecute in the Circuit Court in addition to the Commonwealth attorney, with each attorney handling cases on his own in the Circuit Court.

Appellant's interpretation of the statute requires that the two sentences at issue be read in conjunction; the Commonwealth's interpretation requires that the sentences be read separately. The first sentence states that the Commonwealth and county attorneys "shall assist each other in prosecution within their respective courts." This language is mandatory and requires the attorneys to provide mutual assistance. *See* OAG 82–28. The second sentence states that the two attorneys "may enter into agreements to share or redistribute prosecutorial duties in the Circuit and District Courts." This language is permissive and suggests that the attorneys may agree to significant redistributions of their workloads or structural changes in their duties, and that when this is done a written agreement should formalize the agreement. These two provisions are separate and independent and, as such, do not require that a written agreement be executed and approved when a county attorney assists, but does not take over the duties of, a Commonwealth's attorney. Appellant's claim of error based upon a KRS 15.725 violation must therefore fail.

██ Appellant next claims that Cox's participation in the trial was improper because of his legal relationship with Harding, the victim. Appellant raises this claim pursuant to CR 60.02, which allows appeals based upon claims of error that "were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court." *Young v. Edward Technology Group, Inc.,* Ky.App., 918 S.W.2d 229, 231 (1995). CR 60.02 is the codification of the common law writ of coram nobis, which allows a judgment to be corrected or vacated based "upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were not discovered until after rendition of judg-

ment without fault of the parties seeking relief." *Davis v. Home Indemnity Company,* Ky., 659 S.W.2d 185, 188 (1983) (citing *Harris v. Commonwealth,* Ky., 296 S.W.2d 700 (1956)). CR 60.02 is meant to provide relief which is not available by direct appeal or under RCr 11.42. *Gross v. Commonwealth,* Ky., 648 S.W.2d 853, 856 (1983); *McQueen v. Commonealth,* Ky., 948 S.W.2d 415, 416 (1997). In order to be eligible for CR 60.02 relief, the movant must demonstrate why he is entitled to this special, extraordinary relief. *Gross* at 856.

Relying on *Bethlehem Minerals Company v. Church and Mullins Corporation,* Ky., 887 S.W.2d 327 (1994), the Commonwealth contends that appellant is not entitled to CR 60.02 relief because he did not exercise due diligence in investigating the matter he now raises on appeal. *Id.* at 329. The Commonwealth argues that since Cox's limited guardian status was a matter of public record, it could have been discovered in a more timely fashion upon the exercise of due diligence.

If there had been some reason for appellant to suspect that a fiduciary relationship existed between Cox and the victim, it would not be unreasonable to charge appellant with knowledge of the facts since evidence was a matter of public record. However, to charge appellant with record notice without some basis to establish a duty of inquiry, would be to require all persons to know all things contained in public records whether or not there is reason to search those records. Therefore, appellant's CR 60.02 claim should not be barred as to any conflict of interest arising from Cox's legal relationship with Harding, most notably his limited guardian status, matters which were discovered only upon a post-judgment search of courthouse records.

The statute addressing conflicts of interest states, in relevant part, that

Any prosecuting attorney shall disqualify himself in any proceeding in which he . . . either individually or as a fiduciary:

. . .

(c) Is known by the prosecuting attorney to have an interest that could be substan-

tially affected by the outcome of the proceeding;

. . .

(f) Has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

KRS 15.733(2). For the purposes of this statute, fiduciary refers to "such relationships as executor, administrator, conservator, trustee, and guardian." KRS 15.733(1)(b).

■ Cox's status as limited guardian does not violate the provisions of KRS 15.733(2). Cox was appointed to this temporary position to manage Harding's affairs and to make decisions about Harding's medical treatment while Harding was incapacitated. Technically, a limited guardian is not even a fiduciary under the definition provided in the statute, and Cox did not have any interest, financial or otherwise, that could have been substantially affected by the outcome of appellant's trial. Any fees that Cox could have received for acting as limited guardian would not have been related to the outcome of the criminal trial.

In a decision applying this statute, this Court held that "[a]ny lawyer who undertakes representation of the Commonwealth in a criminal case may not simultaneously represent a party in a civil case arising out of the same transaction or occurrence." *Kentucky Bar Association v. Lovelace*, Ky., 778 S.W.2d 651, 653 (1989); *Commonwealth v. Hubbard*, Ky., 777 S.W.2d 882, 884 (1989). This case differs from *Lovelace* by virtue of the absence of any civil lawsuit.

■ The conflict of interest statute also provides that a court may disqualify any prosecuting attorney upon a showing of actual prejudice. KRS 15.733(3); *see also Summit v. Mudd*, 679 S.W.2d 225, 225–26 (1984) (the mere appearance of impropriety is not sufficient to disqualify the entire staff of the Commonwealth Attorney's office). Furthermore, vindictiveness is not to be presumed. *Clayton v. Commonwealth*, Ky., 786 S.W.2d 866, 869 (1990);. In *Clayton*, the prosecutor in a cocaine trafficking case had been punched by the defendant's father on a prior occasion. Having established that the prosecutor bore no ill feelings toward the defendant, the court did not disqualify him. *Id.* In the case at bar, there was no showing of actual prejudice on Cox's part.

Given the high standard for granting a CR 60.02 motion, a trial court's ruling on the motion receives great deference on appeal and will not be overturned except for an abuse of discretion. *Brown v. Commonwealth*, Ky., 932 S.W.2d 359, 361 (1996); *Whittington v. Cunnagin*, Ky., 925 S.W.2d 455, 456 (1996); *Bethlehem Minerals Company v. Church and Mullins Corporation*, Ky., 887 S.W.2d 327, 329 (1994); *Schott v. Citizens Fidelity Bank and Trust Company*, Ky., 692 S.W.2d 810, 814 (1985). Considering Cox's lack of any interest that could have been substantially affected by the trial's outcome and the absence of a showing of actual prejudice, the was no conflict of interest sufficient to require Cox's disqualification. Moreover, Cox merely assisted with the trial while the Commonwealth's Attorney acted as lead prosecutor and retained full control of the case. *See Hubbard*, 777 S.W.2d at 883. In light of these factors, the trial court's ruling was not an abuse of discretion.

■ The final issue concerns photographs of the victim's injuries. At trial, the Commonwealth introduced these photographs over appellant's objection that this introduction would be prejudicial. Appellant offered to stipulate to the seriousness of Harding's injuries, but the Commonwealth rejected the offer, and the photographs were admitted into evidence.

■ Appellant claims that the trial court erred by admitting the photographs, arguing that their probative value was substantially outweighed by the danger of undue prejudice as prohibited by KRE 403. The general rule is that a photograph, otherwise admissible, does not become inadmissible because it is gruesome and the crime heinous. *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 704, *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 106–07, *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981). According to this princi-

ple, the serious nature of the injuries depicted in the photographs was no reason for their exclusion.

Appellant further argues that his offer to stipulate to the seriousness of Harding's injury would have eliminated the possibility of undue prejudice, and made the admission of the photographs unnecessary. Generally, however, the prosecution is permitted to prove its case by competent evidence of its own choosing, and the defendant may not stipulate away the parts of the case that he does not want the jury to see. *Chumbler v. Commonwealth*, 905 S.W.2d 488, 492 (1995). Moreover,

> It is no answer to say that defense counsel offered to stipulate the essential facts ... hence they were unnecessary. The Commonwealth has a right to prove its case to the jury even when the defendant pleads guilty. The defendant is not entitled to erase the ugly parts of the picture and substitute words in their place. In order for a jury to be able to size up a case fairly and wisely it must be allowed to gain a reasonable perspective, and that can best be done by permitting it to see an unadulterated picture.

*Gall*, 607 S.W.2d at 107 (1980). In this case, the Commonwealth was not required to accept appellant's stipulations regarding the nature and severity of Harding's injuries.

An appellate court should reverse a trial court's ruling under KRE 403 only if there has been an abuse of discretion. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 222 (1996); *Simpson v. Commonwealth*, Ky., 889 S.W.2d 781, 783 (1994). In making a KRE 403 ruling, a trial court must consider three factors: the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth. *Partin*, at 222 (citing Robert Lawson, *The Kentucky Evidence Law Handbook*, § 2.10 at 56 (3rd Ed .1993)). Considering these three enumerated factors, the photographs were not improperly admitted.

For the foregoing reasons, the judgment of the Taylor Circuit Court is affirmed.

COOPER, GRAVES, STEPHENS and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., dissents by separate opinion in which STUMBO, J., joins.

JOHNSTONE, Justice, dissenting.

Respectfully, I dissent from that portion of the majority opinion which holds that Cox's status as a limited guardian and his long-time association with victim Harding do not violate KRS 15.733(2), as well as the majority's conclusion that there "was no conflict of interest sufficient to require Cox's disqualification."

Two things are patently clear in this case. First, there is no doubt that County Attorney Cox and victim Harding had a long-term and ongoing relationship. Cox testified that he had known Harding for over twenty years as a friend, colleague, and client. Cox stated in his petition to be named as limited guardian for Harding that: (1) Harding was the victim of an assault and robbery and was being treated in a Surgical and Trauma Intensive Care Unit; (2) that Cox had acted as Harding's personal and private attorney for at least fifteen years; (3) that he had prepared wills and codicils for Harding; and (4) that he had been named as executor of Harding's will and as trustee for a bequest to Harding's spouse. The petition was filed only days following the robbery.

Second, it is clear that Cox failed to disclose his petition for appointment and his relationship with Harding despite appellant's repeated objections to Cox's participation at trial. It was not until after trial that a search of courthouse records revealed that Cox had been appointed as limited guardian for Harding. At the CR 60 .02 evidentiary hearing, Cox admitted the actions that he had taken on behalf of Harding pursuant to his role as guardian and also disclosed their close personal and professional relationship.

Perplexing indeed is Cox's motive in delving so deeply into the prosecution of the appellant. It is undisputed that Cox prepared the search warrants executed during the robbery investigation; drafted arrest warrants which specified the charges to be

sought; furnished leads to police during the investigation including potential witnesses; accompanied police on witness interviews; provided information concerning property taken during the robbery; and ultimately assisted, for the first time, in a felony prosecution in the Taylor Circuit Court.

While appellant's argument that KRS 15.733(2) compelled the disqualification of Cox is persuasive, I believe the peculiar facts presented by this case speak more directly to the heart of the matter. Justice John Palmore eloquently described the role and importance of the prosecutor in his oft-cited passage from *Niemeyer v. Commonwealth,* Ky., 533 S.W.2d 218, 222 (1976), *modified on other grounds, Blake v. Commonwealth,* Ky., 646 S.W.2d 718 (1983):

> One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be.

It is a fundamental principle that it is the Commonwealth, not the victim of the crime in question, that is the interested party in a criminal case. Therefore, it is essential that a disinterested prosecutor, whose vision is not clouded by the often heart wrenching circumstances of a victim, manage a criminal prosecution.

Despite the best efforts by the county attorney in this case to assist impartially in the prosecution of the case, I fail to see how a reasonable person would not perceive the appearance of impropriety at the very least. In my opinion, the trial court erred by denying appellant's CR 60.02 motion once the totality of the relationship between Cox and the victim was revealed, and such error was fundamental and pervasive. As Justice Brennan noted in *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987):

> An error is fundamental if it undermines confidence in the integrity of the criminal proceeding. The appointment of an interested prosecutor raises such doubts. Prosecution by someone with conflicting loyalties "calls into question the objectivity of those charged with bringing a defendant to judgment." It is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters. We have always been sensitive to the possibility that important actors in the criminal justice system may be influenced by factors that threaten to compromise the performance of their duty.

*Id.* at 810, 107 S.Ct. at 2139, 95 L.Ed.2d at 760 (internal citations omitted).

Cox's relationship with the victim in this case was such that it undermined the confidence in the integrity of the criminal proceeding. I would reverse the judgment of the Taylor Circuit Court and remand this case for a new trial.

STUMBO, J., joins this dissent.