Jeremy Deshannon RICE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2005–SC–000146–MR.

Supreme Court of Kentucky.

Aug. 24, 2006.

---

Kimberly Brooks Tandy, Covington, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, Jeremy Deshannon Rice, was convicted of one count of first degree robbery and one count of first degree burglary. He was sentenced to a consecutive sentence of twenty years on both counts after being found to be a persistent felony offender in the second degree. Thus, Appellant was sentenced to a total of forty years. This appeal is as a matter of right.[1] Appellant asserts three arguments to the Court: 1) that the trial court erred by denying Appellant's motion for a directed verdict of acquittal due to insufficient evidence to sustain the first degree robbery and first degree burglary convictions; 2) Appellant's case was prejudiced substantially when the Commonwealth introduced evidence that inferred Appellant assaulted one of the victims by shooting him, even though Appellant had been acquitted of such charge; and 3) the trial court prejudiced the Appellant by failing to prohibit the introduction of testimony regarding the fact that one of the victims was pregnant when she sustained injuries during the encounter.

On the night of April 24, 2003, Tammy Sanders and her boyfriend, Chris Manley, were inside their home when an unknown stranger knocked on their front door between 10:00 p.m. and 11:00 p.m. Ms. Sanders opened the door and let the stranger, Wanda Hughes, into her home. Ms. Hughes stated that she was lost and asked if she could use the telephone. Ms. Sanders obliged, and thus allowed Ms. Hughes to use her phone. Apparently, Ms. Hughes was unsuccessful in reaching the other party on the line, and she left the house shortly thereafter.

Shortly after 11:00 p.m. on that same night, Ms. Sanders and Mr. Manley heard another knock at their front door. Ms. Sanders answered the door and discovered that it was Ms. Hughes once again. This time, Ms. Hughes asked Ms. Sanders if she was familiar with the location of a particular address. She was not familiar with the address and then proceeded to call Mr. Manley from the bedroom to see if he possibly recognized it. At that point, a person entered into the house wearing a mask and carrying a gun. While being ordered to lie down on the floor, Ms. Sanders was hit in the back, causing her to fall and dislocate her arm. While on the ground, she noticed several other masked individuals entering her residence as well.

Mr. Manley was located in the hallway of the house, where he proceeded to raise both of his hands upon seeing the masked men. While on the floor, Ms. Sanders heard a loud noise followed by Mr. Manley

---

1. Ky. Const. § 110(2)(b).

yelling that he had been shot. The masked men asked both Manley and Sanders where they kept the drugs, money, and "good stuff." Ms. Sanders told them she did not know what they were talking about, and offered them instead her purse and where to find her jewelry in the house. Eventually, the assailants picked up a few items and proceeded to leave the residence.

At trial, the testimony of Chris Manley and Tammy Sanders was very similar. Mr. Manley testified that he encountered one of the intruders in the hallway. This intruder pointed a gun at Mr. Manley, demanding that he give him money and drugs. The assailant backed Mr. Manley into the bedroom where he ordered him to get down on the floor. Soon after Mr. Manley complied, the burglar shot him in the leg. Mr. Manley testified at trial that two other assailants entered the bedroom, with one putting a gun to the victim's head and the other taking change that the couple had been saving.

Neither Ms. Sanders nor Mr. Manley could identify the individuals who violently entered their residence on the night of April 24, 2003. However, Ms. Sanders was able to recognize Wanda Hughes from a photographic line up. Following the identification, Ms. Hughes was arrested and agreed to help the local authorities find the other individuals involved. While Ms. Hughes aided the police in identifying three of the participants, she was not able to positively identify Appellant as being at the crime scene. However, a co-conspirator in the robbery, Arian Brown, did testify that the Appellant was an active participant in the robbery.

On March 8, 2004, a Fayette County Grand Jury indicted Appellant on one count of robbery in the first degree, one count of burglary in the first degree, and one count of being a persistent felony offender in the second degree. The indictment included several co-conspirators as well. In addition, Appellant was charged with assault in the first degree for shooting Mr. Manley. A trial commenced in July 2004, with Appellant and two other co-defendants being charged for their participation in the burglary. Appellant was ultimately acquitted of assault in the first degree, but the jury was hung on the remaining charges of robbery in the first degree, burglary in the first degree, and being a persistent felony offender in the second degree.

A second trial was scheduled for December 14, 2005, in which Appellant was to be tried along with another co-defendant. However, the other co-defendant accepted a plea agreement with the Commonwealth prior to the commencement of trial. Appellant was therefore tried on the charges by himself. The jury found Appellant guilty of robbery in the second degree and burglary in the second degree. In addition, the jury found Appellant to be a persistent felony offender and recommended that the ten year sentence for robbery and ten year sentence for burglary both be enhanced to twenty years. Thus, the jury recommendation, accepted by the trial judge, was that Appellant serve a total of forty years.

Appellant first alleges that the trial court made an error by denying his motion for a directed verdict of acquittal due to insufficient evidence to sustain the first degree robbery and first degree burglary convictions. In support of his argument, Appellant emphasized that the only person who could place him at the scene of the robbery agreed to a plea bargain provided by the Commonwealth for a lesser prison sentence in exchange for his testimony. Also, Appellant stressed to the Court that there was no physical evidence, such as fingerprints or recovered weapons that

could place him at the crime scene. Finally, Appellant asserted that there was no indication that he had in his possession any of the stolen property taken from the victims' home.

■ Appellant's motion for directed verdict at the conclusion of the Commonwealth's case due to insufficiency of the evidence was properly overruled by the trial court. This Court has consistently asserted that the "credibility and weight of the evidence are matters within the exclusive province of the jury."[2] It falls within the authority of the jury to determine whether the evidence presented is sufficient to find an individual guilty or not guilty. The proper standard of review for an appellate court was articulated in *Commonwealth v. Benham*,[3] which stated:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions of credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be *clearly unreasonable for a jury to find guilt*, only then the defendant is entitled to a directed verdict of acquittal.[4]

■ Applying this standard to the facts in this case, the record shows that it was not unreasonable for the jury to conclude that Appellant was guilty beyond a reasonable doubt. Arian Brown, the co-defendant who accepted a plea agreement, testified on behalf of the Commonwealth that Appellant entered the residence first, armed with a nine millimeter handgun, and was the last to exit the home after the burglary occurred. Based on this testimony, and viewing the evidence in favor of the Commonwealth, the jury's verdict of guilty of all charges was not clearly unreasonable. Mr. Brown's testimony represents "more than a mere scintilla of evidence"[5] from which "juror[s] could fairly find guilt beyond a reasonable doubt."[6]

Further, the United States Supreme Court in *Jackson v. Virginia*[7] held the following:

> [T]he critical inquiry of review of the sufficiency of evidence to support [a] criminal conviction must be ... to determine whether [the] record [of] evidence could reasonably support a finding of guilt beyond a reasonable doubt; the *relevant question* is whether, after viewing [the] evidence in light most favorable to [the Commonwealth], *any* rational trier of fact could have found the essential element of the crime beyond a reasonable doubt.[8]

---

2. *Potts v. Commonwealth*, 172 S.W.3d 345, 349 (Ky.2005) (quoting *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky.1999)); *see also Estep v. Commonwealth*, 957 S.W.2d 191, 193 (Ky.1997); *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

3. 816 S.W.2d 186 (Ky.1991).

4. *Id.* at 187 (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4–5 (Ky.1983) (emphasis added)).

5. *Id.* at 188.

6. *Id.*

7. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

8. *Jackson v. Virginia*, 443 U.S. 307–18, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added).

Applying the *Jackson* test to the evidence, and viewing it in the light most favorable to the Commonwealth, it is reasonable to conclude that the jury found the "essential elements" required to convict Appellant.

Appellant's second contention is that he was prejudiced substantially when the Commonwealth introduced evidence that inferred he shot one of the victims, even though Appellant had been acquitted of such charge in a prior trial. The Commonwealth claims lack of preservation. Our recent decision in *Lanham v. Commonwealth* [9] held that a defendant need not object to preserve the question when the trial court had ruled *in limine* that evidence was admissible against him.[10] Specifically, this Court stated in *Lanham,*

> Where a party specifies what evidence should be suppressed and why, the question has been "fairly brought to the attention of the trial court" and the trial court's ruling preserves the issue for appeal. In that scenario, the opponent of the evidence need not object when the same evidence is offered at trial.[11]

Implicit in our ruling was the idea that one need not challenge a previous adverse ruling for to do so would be an exercise in futility or an act of contempt. This case is identical to *Lanham* on this proposition.

Upon the defendant's initial motion *in limine,* the trial court agreed to exclude certain other crimes evidence and directed the prosecution to refrain from mentioning that the defendant had been previously tried and acquitted of assault arising out of the same occurrence. Nevertheless, on direct examination a witness for the Commonwealth testified without objection that the defendant had participated in the robbery/burglary while armed with a nine millimeter handgun; that he ran down the

hallway of the house; and that a shot was fired. Other evidence established that the male victim was shot with a nine millimeter handgun. Therefore, a logical inference was that the defendant had fired the shot and hit the victim. As previously stated, however, the defendant had been tried and acquitted of that assault charge. Thus, the question presented is two-fold: 1) whether there was an error committed by the trial court when it allowed all of the testimony of the Commonwealth's witness to be heard; and 2) whether the trial judge committed an error when it failed to admonish the jury that Appellant was not on trial for assaulting the victim who was shot.

With respect to the first issue, there were two pretrial hearings held. During the first pretrial hearing, Appellant's counsel made a motion *in limine* seeking to suppress any testimony from Arian Brown that alluded to Appellant shooting one of the robbery victims with a nine millimeter handgun. The trial court indicated that as Appellant was acquitted of assault in a previous case, any evidence along those lines would be prejudicial.

■ However, a second pretrial hearing was held in which the Commonwealth made a motion objecting to the exclusion of the testimony. Specifically, the Commonwealth sought to have its witness, Arian Brown, testify that he observed Appellant at the scene of the crime carrying a nine millimeter handgun. The trial judge modified her previously indicated ruling by electing to allow all of the testimony, but promised the defendant an admonition. At trial, the witness stated under oath that he saw Appellant enter the home of the victims, proceeded alone down the resi-

---

9. 171 S.W.3d 14 (2005).

10. *See generally Id.*

11. *Id.* at 21.

dence hallway with a nine millimeter handgun, and heard a loud gun shot shortly thereafter.

There was no error by the trial court in allowing this testimony to be heard. The general rule on the admissibility of evidence of other crimes is that such evidence is "not admissible to prove the character of a person in order to show action in conformity therewith." [12] However, there are notable other uses of such evidence. [13] In *Eldred v. Commonwealth*, [14] the Court stated "such evidence is admissible only if probative of an issue independent of character or criminal predisposition, and only where the probative value of, and need for, the evidence outweighs its unduly prejudicial effect." [15] In this case, Brown's testimony did not highlight the *character or criminal disposition* of Appellant, but instead was used to establish his *identity* at the residence during the burglary, and his *intent* to participate in the crime, [16] and perhaps other of the KRE 404(b)(1) uses of such evidence.

The evidence that created the inference that Appellant shot the victim was not inadmissible as KRE 404(b)(2) allows such testimony if it is "so inextricably intertwined with other evidence [it] is essential to the case that separation ... could not be accomplished without [a] serious adverse effect." [17] The Commonwealth did not ask its witness whether or not he saw Appellant shoot the victim. Rather, the testimony presented was that Appellant had a nine millimeter gun in his hand during the commission of the crime. The testimony that Appellant was present, armed, and proceeded down the hallway where a shot was fired recounted a seamless series of circumstances and events that were impossible to separate. Thus, there was no error committed by the trial court in its ruling to allow the entire testimony of Brown.

Another claim by Appellant is that the trial court committed an error when she failed to admonish the jury that Appellant was not on trial for assault. During each of the pretrial hearings, the trial judge expressly stated that she would admonish the jury that Appellant was not on trial for assault when the Commonwealth's witness testified. However, an admonition was not given at trial, and Appellant asserts that the trial court's failure to do so severely prejudiced his case.

While an admonition by the trial court may have been reasonably expected by Appellant based on the Court's representation, there was no error for the failure to give the admonition. Our previous analysis and conclusion that Brown's testimony was admissible eliminates the possibility that failure to give an admonition regarding its use was error. We are troubled that the trial court stated an intention to admonish the jury that Appellant was not

---

12. KRE 404(b).

13. KRE 404(b)(1) allows other crimes evidence to be admitted "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;" or KRE 404(b)(2) admits such evidence "If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party."

14. 906 S.W.2d 694 (Ky.1994), abrogated on other grounds by *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky.2003).

15. *Eldred v. Commonwealth*, 906 S.W.2d 694, 703 (Ky.1994); *see also Sanders v. Commonwealth*, 801 S.W.2d 665, 674 (Ky.1990).

16. KRE 404(b)(1).

17. KRE 404(b)(2).

on trial for assault. Perhaps if an admonition had been sought, one would have been given. But the trial court's representation that she intended to give such an admonition, standing alone, does not create error where it does not otherwise exist. Even if Appellant had a reasonable expectation that an admonition would be given, and notwithstanding statements of the trial court made during pretrial hearings, when it became apparent that the trial court was not going to give an admonition, Appellant had a duty to speak. At a minimum, Appellant had a duty to remind the court of her pretrial ruling.

█ The third and final issue Appellant raises is that the trial court erred by failing to prohibit the introduction of testimony that one of the victims was pregnant when she sustained injuries during the incident. Appellant also contends that such evidence was irrelevant. Appellant concedes that he made no objection to the evidence of the victim's pregnancy. However, Appellant argues that even though he made no objection at trial, the issue is still preserved because it was raised by co-defendant's counsel during a pretrial hearing.[18]

█ Appellant is incorrect on this point. This Court stated in Brown v. Commonwealth[19] that an "objection of [an] attorney for one codefendant will not be deemed to be [an] objection for other codefendant[s] unless counsel has made it clear that in making [an] objection it is made for both defendants."[20] The fact that co-defendant's counsel made an objection on the issue of which Appellant seeks review is unavailing.

> [W]here two or more defendants are being tried together, it is incumbent upon each party to timely make the court aware of his objection to any of the proceedings. This may be done on behalf of one of the parties or jointly on behalf of others, but the court must be informed of the position taken by a party or he cannot later complain.[21]

Since Appellant's counsel did not object either at the pretrial hearing or during the trial, nor did co-defendant's counsel state that he was objecting on Appellant's behalf, the testimony regarding the victim's pregnancy and injuries sustained during the incident were not improperly admitted.

█ Moreover, this Court has consistently recognized that "[a] certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime."[22] Further, this Court has asserted that "[i]n order for a jury to be able to size up a case fairly and wisely it must be allowed to gain a reasonable perspective."[23] Inclusion of the fact that one of the victims was pregnant is relevant information for the jury to gain a reasonable perspective of the crime scene and the totality of the case. Thus, Appellant's unpreserved argument that the trial court abused its discretion in allowing the testimony regarding the victim's pregnancy

---

18. Teddy Hawkins was a co-defendant prior to trial. He accepted a plea agreement with the Commonwealth the day before the trial began, and was therefore severed from participating.

19. 780 S.W.2d 627 (Ky.1989).

20. *Id.* at 629.

21. *Price v. Commonwealth,* 474 S.W.2d 348, 350 (Ky.1971).

22. *Ernst v. Commonwealth,* 160 S.W.3d 744, 763 (Ky.2005) (*quoting Bussell v. Commonwealth,* 882 S.W.2d 111, 113 (Ky.1994)).

23. *Barnett v. Commonwealth,* 979 S.W.2d 98, 103 (Ky.1998) (*quoting Gall v. Commonwealth,* 607 S.W.2d 97, 107 (Ky.1980)).

and injuries is not grounds for reversal as palpable error.[24]

Accordingly, Appellant's convictions are affirmed.

GRAVES, McANULTY, MINTON, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

---

24. RCr 10.26 states as follows: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."